Richard D. Hoffman (SBN 76799)
Michelle N. Khoury (SBN 307229)
**DUANE MORRIS LLP**
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001
E-mail:  rhoffman@duanemorris.com
            mkhoury@duanemorris.com

Attorneys for Plaintiff,
BERKLEY INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERKLEY INSURANCE COMPANY, a Delaware Corporation,<br><br>                    Plaintiff,<br><br>            v.<br><br>OAKCARE MEDICAL GROUP, INC.,  a California Corporation; Amy Kane, a California Resident; Deborah Chong, a California Resident; Meera Sharnoff, a California Resident; EAST BAY MEDICAL GROUP, INC. f/k/a ALAMEDA HEALTH PARTNERS, INC., a California Non-Profit Corporation; ALAMEDA HEALTH SYSTEM FOUNDATION a/k/a ALAMEDA HEALTH SYSTEM, a California Non-Profit Corporation,<br><br>                    Defendants. | Case No. _____<br><br>**COMPLAINT OF BERKLEY INSURANCE COMPANY FOR THE RESCISSION OF EXECSUITE LIABILITY INSURANCE POLICY ISSUED TO OAKCARE MEDICAL GROUP, INC. OR ALTERNATIVELY FOR REFORMATION OF POLICY AND FOR DECLARATORY RELIEF** |

Berkley Insurance Company ("BIC"), for its complaint, alleges:

## I.    INTRODUCTION

1.      BIC seeks a judicial determination that it is entitled to rescind the ExecSuite Policy bearing Policy No. DCP-329495-P19 issued by BIC to OakCare Medical Group, Inc. ("OakCare") for the policy period May 29, 2020 to May 29, 2021 ("Policy"), which provides coverage on a claims made and reported basis, and that the Policy is void *ab initio* and provides no coverage whatsoever to any person and/or entity for any claims of any kind.

COMPLAINT FOR RESCISSION OR ALTERNATIVELY FOR REFORMATION/DECLARATORY RELIEF

2.     BIC is entitled to rescind the Policy because the Policy was procured based on material false or inaccurate representations communicated by OakCare to BIC's underwriters ("Underwriters") in connection with OakCare's renewal application for the issuance of the Policy. In May and June 2020, Underwriters had been informed by OakCare that OakCare would cease all operations on June 30, 2020, pursuant to the terms of a merger/affiliation transaction ("Transaction") between OakCare and Alameda Health Partners, Inc. ("AHP").  Underwriters were further advised by OakCare that effective July 1, 2020, "all" of OakCare's employees were going to be hired by a new entity ("NewCo") jointly formed by OakCare and AHP.

3.     In the renewal proposal form ("Application") for the Policy dated May 21, 2020, and signed by OakCare's CEO and OakCare's Human Resources Manager (or equivalent position), OakCare had responded "yes" to Question No. 4(e) that asked, "Does the Insured Entity anticipate any plant, facility, branch or other office closings, or layoffs?"

4.     The Application further states: "IF "YES" TO ANY PART OF QUESTIONS 2. THROUGH 5., PROVIDE DETAILS BY ATTACHMENT." No attachment was provided with the Application relating to the "yes" response to Question No. 4(e).

5.     On June 2, 2020, the Underwriters had requested further information from OakCare regarding that affirmative response as a condition precedent to binding coverage and issuing the Policy to OakCare.  Such information was sought by Underwriters to ascertain if NewCo was not going to hire any of the physicians employed by OakCare due to the potential for claims against OakCare by any such non-hired employees.

6.     On June 3, 2020, OakCare's CEO expressly responded to the Underwriters' inquiry by representing that "all" of OakCare's employees were going to be hired by NewCo effective July 1, 2020.  On June 4, 2020, the Policy was issued to OakCare, in reliance on the veracity of such express representations that all of OakCare's employees were going to be hired by NewCo as part of the Transaction.

7.     OakCare's representations to Underwriters that all of the OakCare employees were going to be hired by NewCo on July 1, 2020, were not accurate.  By March 2020, OakCare was aware that four (4) of OakCare's physicians were not going to be hired by NewCo ("Non-Hired

COMPLAINT FOR RESCISSION OR ALTERNATIVELY FOR REFORMATION/DECLARATORY RELIEF

Physicians") in connection with the Transaction.  At no time prior to the issuance of the Policy, were Underwriters informed by OakCare regarding the Non-Hired Physicians.

8. Three (3) of the Non-Hired Physicians have filed actions in Alameda County Superior Court ("Actions") against OakCare and AHP, now known as East Bay Medical Group, Inc. ("East Bay"), the entity that replaced NewCo.  Among other things, Plaintiffs in the Actions have asserted that they were discriminated against for certain claimed disabilities or otherwise retaliated against in connection with NewCo's failure to hire them in connection with the Transaction.

9. In April 2021, it was established in connection with discovery in one of the Actions that by May 2020 OakCare's CEO, President and Board of Directors were aware that the Non-Hired Physicians had been notified in April 2020 that they were not going to be hired by NewCo due to budget constraints even though such physicians had previously been told that they would be hired by NewCo.

10. At no time before the Policy was issued on June 4, 2020, was BIC ever informed by OakCare about the Non-Hired Physicians or that such OakCare employees had been notified in April 2020 they were not going to be hired by NewCo in connection with the Transaction.  To the contrary, OakCare had expressly affirmatively represented to Underwriters that "all" of OakCare's employees were going to be hired by NewCo effective July 1, 2020.

11. If OakCare had informed Underwriters that the Non-Hired Physicians were not going to be hired by NewCo, the Policy would have been issued under materially different terms and conditions in that the premium for the Policy and the amount of the Policy deductibles would have been increased and the Non-Hired Physicians would have been the subject of an endorsement to the Policy entitled "Section IV. Based Upon Individual Exclusion" ("Individual Exclusion Endorsement") excluding coverage under the Policy for any claims "based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving" the Non-Hired Physicians.

12. Alternatively, if for any reason the Policy is not rescinded as requested herein, BIC seeks a judicial declaration that due to OakCare's failure to inform the Underwriters that the Non-

Hired Physicians were not going to be hired by NewCo, that the Policy be reformed to include the Individual Exclusion Endorsement to exclude coverage under the Policy for any claims "based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving" the Non-Hired Physicians.  In connection with such requested reformation of the Policy, BIC seeks an order that the claims against OakCare in the Actions come within the scope of the Individual Exclusion Endorsement such that no potential and/or actual coverage exists under the Policy for such claims and that BIC has no duty to defend, indemnify, pay for, or reimburse, any person and/or entity with respect to any amounts incurred relating to the claims in the Actions.

13.    BIC has defended, and continues to defend, the entirety of the claims against OakCare that are the subject of two (2) of the three (3) Actions pursuant to the Policy subject to a reservation of rights.  BIC has declined coverage under the Policy for one (1) of the three (3) Actions.

## II.    <u>**THE PARTIES**</u>

14.    At all times herein mentioned, BIC was and is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Greenwich, Connecticut, and a citizen of the States of Delaware and Connecticut.

15.    BIC is informed and believes, and thereon alleges, that at all times herein relevant, OakCare was a corporation organized and existing under the laws of the State of California, with its principal place of business in Oakland, California, and a citizen of the State of California.  BIC is informed and believes, and thereon alleges, that on December 29, 2020, OakCare filed a Certificate of Dissolution with the Secretary of State for the State of California.

16.    BIC is informed and believes, and thereon alleges, that at all times herein relevant, Dr. Deborah Chong, one of the Non-Hired Physicians, and the plaintiff in the pending action *D.C. v. OakCare Medical Group, Inc., et al.*, Alameda County Superior Court Case No. RG21088143 ("Chong Action"), was and is a resident domiciled in the State of California and a citizen of the State of California.

COMPLAINT FOR RESCISSION OR ALTERNATIVELY FOR REFORMATION/DECLARATORY RELIEF

17.     Dr. Chong has been named as a defendant in this action so as to bind her to any judicial determinations herein regarding BIC's request for the rescission of the Policy.  BIC is amenable to dismissing Dr. Chong from this action pursuant to a stipulation and order that she agrees to be bound by the judicial determinations made herein.

18.     BIC is informed and believes, and thereon alleges, that at all times herein relevant, Dr. Meera Sharnoff, one of the Non-Hired Physicians, and the plaintiff in the pending action *M.S. v. OakCare Medical Group, Inc., et al.*, Alameda County Superior Court Case No. RG20084226 ("Sharnoff Action"), was and is a resident domiciled in the State of California and a citizen of the State of California.

19.     Dr. Sharnoff has been named as a defendant in this action so as to bind her to any judicial determinations herein regarding BIC's request for the rescission of the Policy.  BIC is amenable to dismissing Dr. Sharnoff from this action pursuant to a stipulation and order that she agrees to be bound by the judicial determinations made herein.

20.     BIC is informed and believes, and thereon alleges, that at all times herein relevant, Dr. Amy Kane one of the Non-Hired Physicians, and the plaintiff in the pending action *Amy Kane v. East Bay Medical Group, Inc., et al.*, Alameda County Superior Court Case No. 22CV008684 ("Kane Action"), was and is a resident domiciled in the State of California and a citizen of the State of California.

21.     Amy Kane has been named as a defendant in this action so as to bind her to any judicial determinations herein regarding BIC's request for the rescission of the Policy.  BIC is amenable to dismissing Dr. Kane from this action pursuant to a stipulation and order that she agrees to be bound by the judicial determinations made herein.

22.     BIC is informed and believes, and thereon alleges, that at all times herein relevant, East Bay, formerly known as Alameda Health Partners, Inc., is and was a nonprofit corporation organized and existing under the laws of the State of California, with its principal place of business in Oakland, California, and a citizen of the State of California.  BIC is informed and believes, and thereon alleges, that East Bay was named as a defendant in the Actions.

23.     East Bay has been named as a defendant in this action so as to bind that entity to any judicial determinations herein regarding BIC's request for the rescission of the Policy.  BIC is amenable to dismissing East Bay from this action pursuant to a stipulation and order that East Bay agrees to be bound by the judicial determinations made herein.

24.     BIC is informed and believes, and thereon alleges, that at all times herein relevant, Alameda Health System Foundation also known as Alameda Health System ("AHS"), is and was a nonprofit corporation organized and existing under the laws of the State of California, with its principal place of business in Oakland, California, and a citizen of the State of California.  BIC is informed and believes, and thereon alleges, that AHS was named as a defendant in the Sharnoff Action and Kane Action.

25.     AHS has been named as a defendant in this action so as to bind that entity to any judicial determinations herein regarding BIC's request for the rescission of the Policy.  BIC is amenable to dismissing AHS from this action pursuant to a stipulation and order that AHS agrees to be bound by the judicial determinations made herein.

### III.  JURISDICTION AND VENUE

26.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a)(1) in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states in that BIC is a Delaware corporation with its principal place of business in Connecticut, and thus a citizen of the States of Delaware and Connecticut, whereas OakCare, East Bay, AHS, Deborah Chong, Meera Sharnoff, and Amy Kane are citizens of the State of California.  Subject to the terms and conditions of the Policy, the Policy has a limit of liability of $1,000,000 for covered loss and an additional $1,000,000 limit for covered Costs of Defense pursuant to the "Section V.E. Wrap Around Costs of Defense in Addition to the Limits of Liability" endorsement to the Policy, and because BIC seeks to rescind the entirety of that insurance contract, such policy limits for the Policy establish that the applicable amount in controversy is in an amount in excess of the sum of $75,000, exclusive of interest and costs.  Also, the amount in controversy claimed by Deborah Chong, Meera Sharnoff,

COMPLAINT FOR RESCISSION OR ALTERNATIVELY FOR REFORMATION/DECLARATORY RELIEF

and Amy Kane in connection with the claims in the Actions exceed the sum of $75,000, exclusive of interest and costs.

27. Pursuant to 28 U.S.C. §1391(a), venue is appropriate in the Northern District of California because jurisdiction is founded upon diversity of citizenship, with plaintiff BIC being a citizen of the States of Delaware and Connecticut and all of the defendants herein being citizens of the State of California subject to personal jurisdiction in this district at the time this action was commenced, and the acts giving rise to the claims for relief asserted herein, including the failure of OakCare to inform BIC's underwriters that the Non-Hired Physicians were not going to be hired by NewCo, including plaintiffs in the Actions, arose in the Northern District of California.

## IV.  FACTUAL BACKGROUND

### A.  OAKCARE'S APPLICATION FOR THE POLICY

28. BIC is informed and believes, and thereon alleges, that in May 2020, Patrick Stroth ("Stroth") of producer Rubicon Insurance Services, LLC ("Rubicon") had sought to obtain information from OakCare's retail insurance agent, Vantreo Insurance Brokerage ("VIB"), to provide to the Underwriters in connection with the submission for the potential renewal of the ExecSuite Policy issued by BIC to OakCare bearing Policy No. DCP-329495-P18 for the policy period May 29, 2019, to May 29, 2020 ("2019 Policy").

29. BIC is informed and believes, and thereon alleges, that on May 20, 2020, Sandy Rardin ("Rardin") of VIB advised Stroth that OakCare had not been responding to her requests for certain financial information and for the completion of a proposal form for the 2020 Policy for submission to the Underwriters.  BIC is informed and believes, and thereon alleges, that Rardin requested assistance from Stroth for the renewal submission to Underwriters because she had been told by OakCare that OakCare was "merging into a new physician's organization effective 7/1/20 and will be dissolved as a legal entity 12/31/20."  BIC is informed and believes, and thereon alleges, that Rardin asked Stroth if it was possible for BIC to extend the 2019 Policy to July 1, 2020, and then issue a "short term" policy from July 1, 2020, to December 31, 2020.

30.     BIC is informed and believes, and thereon alleges, that on May 20, 2020, Stroth responded by advising Rardin that OakCare needed to provide the following information to be provided to Underwriters for the submission for the renewal policy:

"1.     Please advise/confirm that the Group is moving to an entirely new entity and that entity is NOT purchasing the shares of Oakcare [sic] MG

2.     Is there are [sic] any contractual requirement that OakCare MG carry a Tail for a specific term?  (6 years is now the standard requirement)

3.     What is happening to the employees? Are they all going over to the new entity?  If not, are they being offered severance packages?

4.     Finally, are there any of the Board Members or physicians opposing this move?"

31.     BIC is informed and believes, and thereon alleges, that on May 21, 2020, Rardin of VIB responded to Stroth's questions and stated that "here are the client's answers:

1.     Please advise/confirm that the Group is moving to an entirely new entity and that entity is NOT purchasing the shares of Oakcare [sic] MG

Confirmed – the shares of OakCare are NOT being purchased by this new entity and all employees are moving into this new entity 7/1/20.

2.     Is there are [sic] any contractual requirement that OakCare MG carry a Tail for a specific term?  (6 years is now the standard requirement)

There is no contractual requirement for OakCare to carry a tail.

3.     What is happening to the employees? Are they all going over to the new entity?  If not, are they being offered severance packages?

[E]mployees are moving into the new organization.

4.     [Finally], are there any of the Board Members or physicians opposing this move?

This was approved by the Board and Shareholders. Nobody has contacted me or OakCare opposing this move."

COMPLAINT FOR RESCISSION OR ALTERNATIVELY FOR REFORMATION/DECLARATORY RELIEF

32.     BIC is informed and believes, and thereon alleges, that on May 21, 2020, Stroth forwarded to Underwriters such responses from OakCare and stated, in part, "Below you'll see the responses from the insured's representative confirming no change in control."

33.     BIC is informed and believes, and thereon alleges, that on May 21, 2020, OakCare's insurance broker submitted to Underwriters the Application entitled "Executive Liability Insurance Existing Insured Proposal Form (BEL 32515 05-13)" for the Policy.  The Application contains a signature by Peter Hohl ("Hohl") as CEO of OakCare and a signature by Maisha Selmon as Human Resources Manager (or equivalent position) dated May 21, 2020.

34.     A true and correct copy of the signed Application for the Policy is attached hereto as Exhibit "A" and incorporated herein by this reference.  Certain financial information provided by OakCare in the Application has been redacted.

35.     The completed Application contained a response of "YES" to Question No. 4(e) of the General Information Section that had requested "Within the next 12 months:…(e) does the Insured Entity anticipate any plant, facility, branch or office closings, or layoffs?"

36.     The completed Application further states: "IF "YES" TO ANY PART OF QUESTIONS 2. THROUGH 5., PROVIDE DETAILS BY ATTACHMENT." No attachment was provided with the Application relating to the "yes" response to Question No. 4(e).

37.     The completed Application contained, in part, the following representations by OakCare as the applicant for the Policy:

The undersigned, acting on behalf of all proposed **Insureds**, declare that the statements set forth herein are true and correct and that thorough efforts have been made to obtain sufficient information from each **Insured** proposed for this insurance to facilitate the proper and accurate completion of this Proposal Form.

The undersigned agree that the particulars and statements contained in the Proposal Form and any material submitted herewith are their representations and are the basis of the insurance contract. The undersigned further agree that the Proposal Form and any material submitted herewith shall be considered attached to and a part of the **Policy**. Any material submitted with the Proposal Form shall be

9

maintained on file (either electronically or paper) with the **Insurer** and shall be deemed to be attached hereto as if physically attached.

It is further agreed that:

* * *

- any **Policy**, if issued, will be in reliance upon the truth of such representations, provided, however, with respect to such statements and representations, no knowledge or information possessed by any **Insured Person** shall be imputed to any other **Insured Person**.  If any person or persons knew as of the **Policy** inception date that such declarations and statements contained in the Proposal Form(s) were untrue, inaccurate or incomplete, and such statements materially affect either the acceptance of the risk or the hazard assumed by the **Insurer**, under this **Policy**, then this **Policy** shall not apply as to that person or persons.  However, if the President, Chief Executive Officer, Chief Financial Officer or Managing Partner of the Insured Entity knew as of the **Policy** inception date that such declarations and statements contained in the Proposal Form(s) were untrue, inaccurate or incomplete, and such statements materially affect either the acceptance of the risk or the hazard assumed by the **Insurer** under this **Policy**, then this **Policy** shall not apply as to that person or persons and the **Insured Entity**;

* * *

- this Proposal Form has been completed as respects the <u>entire</u> **Insured Entity**;

* * *

38.     On or about May 26, 2020, Underwriters issued a Quote for the proposed Policy that included, among other coverage sections, Employment Practices Liability Insurance ("EPL Coverage").

39.     On June 2, 2020, OakCare's brokers requested that Underwriters bind coverage for the Policy with a policy period of May 29, 2020 to May 29, 2021.

40.     On June 2, 2020, the Underwriters advised Stroth that coverage could not be bound as requested by OakCare until two (2) subjectivities ("Subjectivities") were satisfied regarding the details of OakCare's affirmative response to Question No. 4(e) in the Application and the impact of COVID-19 on OakCare's business.

41.     BIC is informed and believes, and thereon alleges, that on June 3, 2020, Hohl, as CEO of OakCare, had provided the following response to VBI regarding the Subjectivities:

> I assume the explanation can be in email form to you.  OakCare Medical Group is merging with another physician organization effective 7/1/20.  All OakCare employees will be moving into the new organization of that date and OakCare will cease operations on 7/1 (except for runoff).  Filings with regulators will target 12/31/20 for the full dissolution of the OakCare legal entity.

42.     On June 3, 2020, Stroth advised Underwriters of that response from Hohl of OakCare regarding the Subjectivities as follows:

> Below is the response from the Insured detailing the "Yes" response on the application.  As we've discussed, as we sought ERP alternatives, the Insured will be closing their operations and moving to a newly formed entity.  All of the employees will be moving to the new entity as well, so there will be no layoffs.
>
> In consideration of the pending transition, please accept this correspondence as confirmation the insured anticipates no unusual financial impact as a result of COVID-19, including any planned layoffs or other reductions in force.

43.     On June 4, 2020, Underwriters issued the Policy in reliance on, among other things, Hohl's June 3, 2020 representations on behalf of OakCare regarding the Subjectivities.

44.     A true and correct copy of the Policy is attached hereto as Exhibit "B" and incorporated herein by this reference.

45. Section VIII.B. of the General Conditions Section of the Common Policy Terms and Conditions Section (Form CT 32400 rev. 08-18) ("Common Form") of the Policy contained the following provisions:

**B.   Proposal**

The **Proposal** is the basis of this **Policy** and is incorporated in and constitutes a part of this **Policy**. The Proposal Form(s) and any material submitted with the Proposal Form(s) shall be maintained on file with the **Insurer** and shall be deemed to be attached hereto as if physically attached. It is agreed by the **Insureds** that the statements in the **Proposal** are their material representations and that this **Policy** is issued in reliance upon the truth and accuracy of such statements. With respect to such statements, no knowledge or information possessed by any **Insured Person** shall be imputed to any other **Insured Person**.

If any person(s) knew as of the **Policy** inception date that such statements contained in the **Proposal** were untrue, inaccurate or incomplete, and such statements materially affect either the acceptance of the risk or the hazard assumed by the **Insurer** under this **Policy**, then coverage shall not apply as to that person or persons.

If the President, Chief Executive Officer, Chief Financial Officer or Managing Partner of the **Insured Entity** knew as of the **Policy** inception date that such statements contained in the **Proposal** were untrue, inaccurate or incomplete and such statements materially affect either the acceptance of the risk or the hazard assumed by the **Insurer** under this **Policy**, then coverage shall not apply as to that person(s) and the **Insured Entity**.

Notwithstanding the foregoing, Insuring Agreement I. A. of the Directors, Officers and Corporate Liability Insurance Coverage Section of this **Policy** shall not be rescinded by the **Insurer** as to any person(s) who did not know

as of the **Policy** inception date that such statements contained in the

**Proposal** were untrue, inaccurate or incomplete.

46.     Section III.P. of the Common Form defined "**Proposal**" to mean the "Proposal

Form and any material submitted therewith."

**B.     BIC'S DEFENSE OF THE CLAIMS BY DR. SHARNOFF AND DR.
        CHONG AGAINST OAKCARE UNDER A RESERVATION OF RIGHTS**

47.     On or about June 22, 2020, Berkley Select, claims administrator for BIC, first

received written notice directly from Hohl of OakCare of a demand letter dated June 5, 2020,

from counsel for Meera Sharnoff to OakCare that asserted claims by Dr. Sharnoff against

OakCare relating to the alleged failure of Dr. Sharnoff to be hired by NewCo in connection with

the Transaction.

48.     BIC is informed and believes, and thereon alleges, that in March 2020 OakCare

and its CEO were aware that four (4) OakCare physicians, including Meera Sharnoff, Deborah

Chong, and Amy Kane, were not going to be hired by NewCo and that in April 2020 Dr. Sharnoff

was first notified that she was not going to be hired by NewCo.

49.     On or about June 22, 2020, Berkley Select first received written notice directly

from Hohl of OakCare of a demand letter dated June 19, 2020, from counsel for Deborah Chong

to OakCare that asserted claims by Dr. Chong against OakCare relating to the alleged failure of

Dr. Chong to be hired by NewCo in connection with the Transaction.

50.     BIC is informed and believes, and thereon alleges, that in March 2020 OakCare

and its CEO were aware that four (4) OakCare physicians, including Meera Sharnoff, Deborah

Chong, and Amy Kane, were not going to be hired by NewCo and that in April 2020 Dr. Chong

was first notified that she was not going to be hired by NewCo.

51.     In June 2020, Berkley Select on behalf of BIC agreed to defend the claims by Dr.

Sharnoff and Dr. Chong against OakCare pursuant to the Policy and appointed defense counsel

for OakCare subject to a reservation of rights.

52.     On December 31, 2020, Dr. Sharnoff filed a complaint in the Sharnoff Action

against OakCare, AHP, and AHS that contained the following causes of action: (1) Breach of

COMPLAINT FOR RESCISSION OR ALTERNATIVELY FOR REFORMATION/DECLARATORY RELIEF

Contract; (2) Promissory Estoppel; (3) Unlawful Disability Discrimination; (4) Refusal to Provide Reasonable Accommodation; (5) Refusal to Engage in Interactive Process; (6) Unlawful Retaliation; (7) Declaratory Relief; and (8) Wrongful Termination as Against Public Policy.  On December 2, 2021, Dr. Sharnoff filed a first amended complaint in the Sharnoff Action against OakCare, AHP, and AHS that contained the following causes of action: (1) Promissory Estoppel; (2) Unlawful Disability Discrimination; (3) Refusal to Provide Reasonable Accommodation; (4) Refusal to Engage in Interactive Process; (5) Unlawful Retaliation; (6) Declaratory Relief; and (7) Wrongful Termination as Against Public Policy. BIC refers to such claims for informational purposes only and not as to the veracity and/or the merits of any claims that have been asserted against OakCare in the Sharnoff Action.

53.     On January 29, 2021, Dr. Chong filed a complaint in the Chong Action against OakCare and East Bay that contained the following causes of action: (1) Discrimination in violation of FEHA; (2) Retaliation in violation of FEHA; (3) Failure to make reasonable accommodations in violation of FEHA; (4) Failure to engage in the interactive process in violation of FEHA; (5) CFRA retaliation; (6) Wrongful termination in violation of public policy; (7) Breach of contract; (8) Promissory estoppel; and (9) Declaratory relief.  On June 3, 2022, Dr. Chong filed a first amended complaint in the Chong Action against OakCare and East Bay that contained the same causes of action alleged in the initial complaint. BIC refers to such claims for informational purposes only and not as to the veracity and/or the merits of any claims that have been asserted against OakCare in the Chong Action.

54.     In April 2021, Berkley Select obtained certain documents produced in connection with discovery in the Chong Action that established that prior to May 2020, Hohl, OakCare's Board of Directors, and OakCare's President were aware that the Non-Hired Physicians, including Plaintiffs in the Actions, had been notified in April 2020 that they were not going to be hired by NewCo in connection with the Transaction.

55.     On April 26, 2021, BIC issued a supplemental coverage letter to OakCare that, among other things, reserved the right to file an action to rescind the Policy in connection with OakCare's representations to Underwriters in May and June 2020 in applying for the Policy that

"all" of OakCare's employees were going to be hired by NewCo in connection with the Transaction.

**C.**     **BIC'S DENIAL OF THE CLAIM BY DR. KANE AGAINST OAKCARE**

56.     On March 21, 2022, Dr. Kane filed a complaint in the Kane Action against OakCare, East Bay, and AHS that asserted claims by Dr. Kane against OakCare relating to the alleged failure of Dr. Kane to be hired by NewCo in connection with the Transaction. The complaint in the Kane Action contained the following causes of action: (1) Violation of California Health and Safety Code § 1278.5; (2) Violation of California Labor Code § 1102.5; and (3) Wrongful Termination in Violation of Public Policy. BIC refers to such claims for informational purposes only and not as to the veracity and/or the merits of any claims that have been asserted against OakCare in the Kane Action.

57.     On or about July 15, 2022, Berkley Select, claims administrator for BIC, first received written notice of the complaint filed in the Kane Action.

58.     BIC is informed and believes, and thereon alleges, that in March 2020 OakCare and its CEO were aware that four (4) OakCare physicians, including Meera Sharnoff, Deborah Chong, and Amy Kane, were not going to be hired by NewCo and that in April 2020 Dr. Kane was first notified that she was not going to be hired by NewCo.

59.     In April 2021, Berkley Select obtained certain documents produced in connection with discovery in the Chong Action that established that prior to May 2020, Hohl, OakCare's Board of Directors, and OakCare's President were aware that the Non-Hired Physicians, including Plaintiffs in the Actions, had been notified in April 2020 that they were not going to be hired by NewCo in connection with the Transaction.

60.     On August 4, 2022, BIC issued a letter declining to defend or indemnify the claims by Dr. Kane against OakCare as alleged in the Kane Action because, among other reasons, the claims asserted in the Kane Action were not first made during the policy period and were not reported to BIC by 90 days after the termination of the Policy (i.e. not later than August 27, 2021). In addition, BIC advised that coverage does not appear to exist under the Policy and the

Policy is subject to rescission because OakCare failed to provide accurate requested information to BIC in connection with procurement of the Policy (specifically,

OakCare's representations to Underwriters in May and June 2020 in applying for the Policy that "all" of OakCare's employees were going to be hired by NewCo in connection with the Transaction.)

## FIRST CLAIM FOR RELIEF

(Rescission of the Policy As to All Defendants)

61.     BIC refers to the foregoing paragraphs 1 through 60 and incorporates the same herein by this reference.

62.     Prior to the issuance of the Policy on June 4, 2020, Underwriters had relied upon the express representations of OakCare in certain communications, including but not limited to, in e-mails dated May 21, 2020, and June 3, 2020, in connection with OakCare's Application for the Policy that "all" OakCare employees were going to be hired by NewCo effective July 1, 2020, in connection with the Transaction.

63.     Prior to the issuance of the Policy on June 4, 2020, OakCare failed to inform Underwriters that OakCare was aware that the four (4) Non-Hired Physicians had already been notified in April 2020 that such OakCare employees would not be hired by NewCo.

64.     BIC is informed and believes, and thereon alleges, that OakCare's CEO, President, and Board of Directors all were aware by May 2020 that the Non-Hired Physicians had been notified that they were not going to be hired by NewCo in connection with the Transaction.

65.     At no time before the issuance of the Policy did OakCare ever inform the Underwriters that OakCare's representations in May and June 2020 to the Underwriters that "all" OakCare employees were being hired by NewCo on July 1, 2020 in connection with the Transaction were not accurate and that OakCare was aware that the Non-Hired Physicians had already been informed that they were not going to be hired by NewCo.

66.     BIC issued the Policy in reliance upon, among other things, the truth and accuracy of OakCare's representations that "all" OakCare employees were going to be hired by NewCo in connection with the Transaction.

67.     If OakCare had truthfully and accurately disclosed to the Underwriters before the issuance of the Policy that OakCare was aware that the Non-Hired Physicians had already been notified in April 2020 that they were not going to be hired by NewCo in connection with the Transaction, BIC would not have issued the Policy on the terms and conditions contained in the Policy and would have charged a higher premium, raised the amount of the deductibles, and the Non-Hired Physicians would have been the subject of the Individual Exclusion Endorsement to the Policy.

68.     An actual controversy has arisen, and now exists, between BIC and OakCare in that BIC contends, and is informed and believes that OakCare denies, that by virtue of the foregoing, the Policy is void *ab initio* and provides no insurance coverage whatsoever to any person or entity and that BIC is entitled to rescind the Policy.

69.     BIC seeks a judicial declaration that by virtue of OakCare's false or inaccurate representations to the Underwriters that "all" of OakCare's employees were going to be hired by NewCo in connection with the Transaction, the Policy is void *ab initio* and provides no insurance coverage whatsoever to any person or entity such that BIC has no obligation to pay for or reimburse OakCare and/or any person who qualifies as an Insured under the Policy any amounts incurred in connection with any claims, including but not limited to, claims in the Actions and that BIC is entitled to rescind the Policy.  BIC further seeks an order that the Policy is rescinded.

70.     This complaint constitutes notice of rescission of the Policy by BIC.  BIC hereby offers to restore all premiums paid by or for the benefit of OakCare with respect to the Policy.

**<u>SECOND CLAIM FOR RELIEF</u>**

(Declaratory Relief for Reformation of the Policy to Include

the Individual Exclusion Endorsement as to All Defendants)

71.     BIC refers to the foregoing paragraphs 1 through 70 and incorporates the same herein by this reference.

72.      In the alternative, if the Policy is not rescinded as requested in the first claim for relief herein, an actual controversy has arisen, and now exists, between BIC and OakCare in that BIC contends, and is informed and believes that OakCare denies, that had OakCare informed the

17

Underwriters in connection with the Application that the Non-Hired Physicians were not going to be hired by NewCo, BIC would have issued the Individual Exclusion Endorsement to the Policy to preclude coverage for any claims "based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving" the Non-Hired Physicians.

73.     As alternative relief, BIC seeks, and is entitled to obtain, a judicial declaration that the Policy is reformed to include the Individual Exclusion Endorsement with respect to the Non-Hired Physicians.

**THIRD CLAIM FOR RELIEF**

(Declaratory Relief – No Duty to Defend the Claims in the Actions

Pursuant to the Individual Exclusion Endorsement as to All Defendants)

74.     BIC refers to the foregoing paragraphs 1 through 73 and incorporates the same herein by this reference.

75.     In the alternative, if the Policy is not rescinded as requested in the first claim for relief herein, and the Policy is reformed to include the Individual Exclusion Endorsement as requested in the second claim for relief herein, an actual controversy has arisen, and now exists, between BIC and OakCare in that BIC contends, and is informed and believes that OakCare denies, that no potential coverage exists under the Policy for the claims in the Actions pursuant to the Individual Exclusion Endorsement such that BIC has no duty to defend any person and/or entity with respect to the claims in the Actions.

76.     No potential coverage exists under the Policy for the claims in the Actions pursuant to the Individual Exclusion Endorsement because such claims are "based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving" Dr. Sharnoff, Dr. Chong, and Dr. Kane, three (3) of the Non-Hired Physicians, such that the claims in the Actions come within the scope of the Individual Exclusion Endorsement.

77.     As alternative relief, BIC seeks, and is entitled to obtain, a judicial declaration that pursuant to the Individual Exclusion Endorsement, no potential coverage exists under the Policy for the claims in the Actions such that BIC has no duty to defend any person and/or entity relating to any claims in the Actions.

**FOURTH CLAIM FOR RELIEF**

(Declaratory Relief – No Duty to Indemnify the Claims in the Actions

Pursuant to the Individual Exclusion Endorsement as to All Defendants)

78.     BIC refers to the foregoing paragraphs 1 through 77 and incorporates the same herein by this reference.

79.     In the alternative, if the Policy is not rescinded as requested in the first claim for relief herein, and the Policy is reformed to include the Individual Exclusion Endorsement as requested in the second claim for relief herein, an actual controversy has arisen, and now exists, between BIC and OakCare in that BIC contends, and is informed and believes that OakCare denies, that no actual coverage exists under the Policy for the claims in the Actions pursuant to the Individual Exclusion Endorsement such that BIC has no duty to indemnify any person and/or entity with respect to the claims in the Actions.

80.     No actual coverage exists under the Policy for the claims in the Actions pursuant to the Individual Exclusion Endorsement because such claims are "based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving" Dr. Sharnoff, Dr. Chong, and Dr. Kane, three (3) of the Non-Hired Physicians, such that the claims in the Actions come within the scope of the Individual Exclusion Endorsement.

81.     As alternative relief, BIC seeks, and is entitled to obtain, a judicial declaration that pursuant to the Individual Exclusion Endorsement, no actual coverage exists under the Policy for the claims in the Actions such that BIC has no duty to indemnify, pay for, or reimburse any amount to any person and/or entity relating to any claims in the Actions.

**FIFTH CLAIM FOR RELIEF**

(Declaratory Relief – No Coverage Pursuant to Policy Section VIII. General Conditions as to All

Defendants)

82.     BIC refers to the foregoing paragraphs 1 through 81 and incorporates the same herein by this reference.

83.     In the alternative, if the Policy is not rescinded as requested in the first claim for relief herein, and if the Policy is not reformed to include the Individual Exclusion Endorsement as

COMPLAINT FOR RESCISSION OR ALTERNATIVELY FOR REFORMATION/DECLARATORY RELIEF

requested in the second claim for relief herein, an actual controversy has arisen, and now exists, between BIC and OakCare in that BIC contends, and is informed and believes that OakCare denies, that no coverage exists under the Policy as to OakCare, pursuant to Policy Section VIII. General Conditions, B. Proposal, which provides in pertinent part: "If the President, Chief Executive Officer, Chief Financial Officer or Managing Partner of the Insured Entity knew as of the Policy inception date that such statements contained in the Proposal were untrue, inaccurate or incomplete and such statements materially affect either the acceptance of the risk or the hazard assumed by the Insurer under this Policy, then coverage shall not apply as to that person(s) and the Insured Entity."

84.    No potential or actual coverage exists under the Policy pursuant to Section VIII. General Conditions, B. Proposal because of the untrue and inaccurate statements in the Application.

85.    As alternative relief, BIC seeks, and is entitled to obtain, a judicial declaration that pursuant to Policy Section VIII. General Conditions, B. Proposal, no coverage exists under the Policy for the claims in the Actions such that BIC has no duty to defend or indemnify, pay for, or reimburse any amount to any person and/or entity relating to any claims in the Actions.

## SIXTH CLAIM FOR RELIEF

(Declaratory Relief – No Coverage for Kane Action Because the Claim was Not Made and Reported During the Policy Period as to All Defendants)

86.    BIC refers to the foregoing paragraphs 1 through 85 and incorporates the same herein by this reference.

87.    In the alternative, if the Policy is not rescinded as requested in the first claim for relief herein, and if the Policy is not reformed to include the Individual Exclusion Endorsement as requested in the second claim for relief herein, an actual controversy has arisen, and now exists, between BIC and OakCare in that BIC contends, and is informed and believes that OakCare denies, that no coverage exists under the Policy for the Kane Action because the claims asserted in the Kane Action were not first made during the policy period and were not reported to BIC by 90 days after the termination of the Policy (i.e. not later than August 27, 2021).

COMPLAINT FOR RESCISSION OR ALTERNATIVELY FOR REFORMATION/DECLARATORY RELIEF

88.     No potential or actual coverage exists under the Policy for the Kane Action as the Policy was a claims made and reported policy, which required covered claims to be made against an Insured during the policy period of May 29, 2020 to May 29, 2021 and reported to BIC not later than 90 days after the termination of the Policy (i.e. not later than August 27, 2021). The claims asserted in the Kane Action were not made during the policy period and were not reported to BIC by August 27, 2021.

89.     As alternative relief, BIC seeks, and is entitled to obtain, a judicial declaration that no coverage exists under the Policy for the Kane Action as the claims in the Kane Action were not first made against an Insured and reported to BIC during the policy period as required under the Policy, such that BIC has no duty to defend or indemnify, pay for, or reimburse any amount to any person and/or entity relating to any claims in the Kane Action.

**<u>PRAYER</u>**

WHEREFORE, BIC prays for judgment against the defendants, and each of them, as follows:

1.     For a declaration that the Policy is void *ab initio*;

2.     For a declaration that BIC is entitled to rescind the Policy;

3.     For an order directing that the Policy is rescinded;

4.     For a declaration that BIC has no obligation to defend or indemnify OakCare and/or any person and/or entity who qualifies as an Insured under the Policy with respect to any claims asserted against OakCare, including but not limited to, the claims against OakCare in the Actions and/or any claims against OakCare by co-defendants of OakCare in the Actions;

5.     Alternatively, if the Policy is not rescinded, for a declaration that the Policy is reformed to include the Individual Exclusion Endorsement so as to preclude any potential or actual coverage for any claims asserted by the Non-Hired Physicians against OakCare and/or any person and/or entity who qualifies as an Insured under the Policy, including but not limited to, the claims in the Actions, such that BIC

COMPLAINT FOR RESCISSION OR ALTERNATIVELY FOR REFORMATION/DECLARATORY RELIEF

1     has no duty under the Policy to defend or indemnify any of the claims in the

2     Actions;

3     6.     Alternatively, if the Policy is not rescinded or reformed, for a declaration that the

4            coverage does not exist as to OakCare and/or any person and/or entity who

5            qualifies as an Insured under the Policy pursuant to Policy Section VIII. General

6            Conditions, B. Proposal, and thus BIC has no obligation to defend or indemnify

7            OakCare and/or any person and/or entity who qualifies as an Insured under the

8            Policy for the claims in the Actions;

9     7.     Alternatively, if the Policy is not rescinded or reformed, for a declaration that

10           coverage does not exist as to OakCare and/or any person and/or entity who

11           qualifies as an Insured under the Policy for the Kane Action because the claims

12           asserted in the Kane Action were not made and reported during the policy period

13           as required under the Policy, and thus BIC has no obligation to defend or

14           indemnify OakCare and/or any person and/or entity who qualifies as an Insured

15           under the Policy for the Kane Action; and

16    8.     For BIC's costs of suit incurred herein, and for such other and further relief as the

17           Court deems appropriate.

18

19    September 12, 2022                    DUANE MORRIS LLP

20

21                                          By: */s/ Richard D. Hoffman*
22                                              Richard D. Hoffman
                                                Michelle N. Khoury
23                                              Attorneys for Plaintiff,
                                                Berkley Insurance Company
24

25

26

27

28

COMPLAINT FOR RESCISSION OR ALTERNATIVELY FOR REFORMATION/DECLARATORY RELIEF